FRANK W. HAENKY *et al.* v. JOSEPH WEISHAAR *et al.*

No. 10519.

"ACCUMULATIONS" OF LAND—*held not to include other lands subsequently purchased.* H. and W., contemplating marriage, entered into an antenuptial contract by the terms of which it was agreed that an eighty acre farm and the "accumulations" thereof should, on the death of both of the parties to the contract, be divided in equal shares among the five sons of W., by a former husband, and whatever children should be born to the parties to the contract. *Held*, that the word "accumulations" does not include lands subsequently purchased and deeded to H., whether paid for from the products of the land mentioned in the contract or not; that the word "accumulations," as used in this connec-

tion, included only improvements and betterments on the land itself, and whatever would pass with the original tract as a betterment or accretion.

Error from Jefferson District Court. Louis A. Myers, Judge. Opinion filed March 5, 1898. *Reversed.*

*Henry Elliston* and *Tufts & Crowell*, for plaintiffs in error.

*Wm. F. Gilluly* and *Waters & Waters*, for defendants in error.

ALLEN, J. On January 17, 1863, John Haenky married Mary Anna Weishaar, then a widow, having five children by her former husband. At the time of the marriage, she resided with her children on eighty acres of land in Jefferson county, a little more than twenty acres of which was in cultivation, and on which there was a small log house. This tract belonged to her deceased husband at the time of his death, which occurred in 1857. After their marriage, Haenky and wife resided on this tract of land, and continued to occupy it as their homestead until January, 1892. The plaintiff in error, Frank Haenky, is the only child born to John and Mary Anna Haenky. On the twenty-first of November, 1865, Haenky obtained from one Gibbs, who held a tax title thereto, a quitclaim deed for a quarter-section of land adjoining the tract on which he lived. Afterward, in January, 1869, he obtained an administrator's deed to the same land, reciting a consideration of $2250. On the fourth day of May, 1883, he obtained a deed from Cyrenus Hudson for eighty acres of land in an adjoining section. August 23, 1892, certain lots in the town of Nortonville were deeded to him. On the twenty-fourth of September, 1891, John Haenky made a will, the provisions of which were accepted by his

wife, by the terms of which he gave the use, rents and profits of the farm lands to which he had obtained deeds as before stated to her during her life, and after her death to her five sons and Frank W. Haenky, to be divided equally among them. Mary Anna Weishaar died October 20, 1892. On the twenty-seventh of January, 1893, John Haenky deeded the Nortonville property to his son Frank. On the thirty-first of the same month he executed another will, by which he revoked that executed on the twenty-fourth of September, 1891, and gave to the children which he had by his first wife one dollar each, reciting that he had provided for them to some extent during his life. He devised his farm lands to his son Frank, and whatever interest he had in the original eighty acres to the five Weishaar boys. On the sixth of October, 1894, he executed a deed conveying the farm land, the title to which stood in his name, to Frank Haenky. John Haenky died on the first of June, 1895. The four surviving sons of Mrs. Haenky by her first husband brought this action to obtain a cancellation of the deeds executed by John Haenky to his son Frank, and partition of the land in equal shares to the Weishaars and Frank Haenky.

The claim of the plaintiffs was that there was an antenuptial contract, in writing, executed by Haenky and wife, which determined the disposition of the property after their death, and that John Haenky had no power to make any disposition of the lands in controversy inconsistent with the terms of that agreement. The defendant denied that any antenuptial contract was ever entered into, and contended that the only contract in fact made was one executed and acknowledged on the twenty-fourth day of March, 1863, and recorded in the office of the register of deeds of Jefferson County on the fifth of May, 1866. The

original instrument is incorporated in the case-made, and it is conceded that its terms are wholly insufficient to confer on the plaintiffs below the rights claimed by them. The contention on their behalf was, and is, that a prior contract had been duly made and executed though never recorded; that this contract had been preserved by John Haenky, and had been repeatedly referred to, and recognized by himself and wife in the presence of the other members of the family and of persons visiting at their house. Although several witnesses claimed to have seen the writing which was referred to as a contract between Haenky and wife with reference to their property, only one witness claims to have ever read it or to know even the substance of what was contained in it. Charles Tholen testified that he was a lawyer, and in 1863 had an office in Leavenworth, with Judge McCahon; that Haenky and Mrs. Weishaar came to his office before they were married, and that he drew an antenuptial contract, which was then signed by them. The contents of the instrument are stated by him, as follows:

"The contents of that paper were that she having a piece of property, a farm in the country, I think she said Jefferson County but I would not be positive about it, eighty acres of land, having a farm and having five children, five sons, and Haenky, who at that time kept a boarding house which was on Seneca street, between Third and Fourth, was about to be married to her having sons in Illinois or children in Illinois, and having also some property there, this paper provided that if after the marriage, if she should die, Mrs. Weishaar should die, that her children should inherit her property and also all the accumulations of that property and Haenky should have the right of possession during his lifetime and the enjoyment of that property and accumulations thereof as long as he lived; that after his death the property

14—59 KAN.

should be divided in shares between Mrs. Weishaar's children and whatever children they might have, Mr. Haenky and Mrs. Weishaar, during their marriage, such child or children should share in equal share, together with those five children. And the children in Illinois of Mr. Haenky to have nothing; and then again on the other side, if Mr. Haenky should die first then Mrs. Haenky or her children did not inherit any property of Mr. Haenky in Illinois, Illinois was mentioned I recollect that. That was about the contents of the paper.''

The only question it seems necessary to discuss, of the many raised on the record, is the legal effect of such an instrument as Tholen testifies was drawn by him and executed by Haenky and Mrs. Weishaar. Neither of the parties at that time had any title to any of the property in controversy in this case. The eighty acres which belonged to Mrs. Haenky's first husband is not, and never has been, claimed by Frank Haenky, nor does he claim any interest in it. The dispute is solely over after-acquired lands, the title to which was taken by John Haenky in his own name. There was a great deal of evidence offered at the trial with reference to the conduct, the earnings, and the expenditures of the Weishaar children and Frank Haenky, but there is no claim of any other contract on which rights to this property can be founded than the antenuptial agreement testified to by Tholen. He states that the contract mentioned the farm and provided that if Mrs. Weishaar should die her children should inherit her property, and also all the accumulations of that property; that after her death the property should be divided in equal parts between Mrs. Weishaar's children and whatever children the contracting parties might have. The references in the contract to Haenky's children by his former wife and to his property in Illinois have no bearing on the

case before us. The rights of the Weishaars to this subsequently acquired land hangs solely on the meaning of the word "accumulations" as used in the contract. It is contended in their behalf that all this property was accumulated from the original eighty acre tract, supplemented by the labor of the Weishaar boys before they left home. It is said that John Haenky did no labor as a farm hand, and that he had no other means with which to acquire property.

We may remark, in passing, that it seems quite remarkable that eighty acres of land, with not more than thirty of it in cultivation should have produced so large a surplus after the maintenance of a family of eight persons as to provide for the purchase of all this after-acquired property, but we do not base our decision on any view we may entertain concerning the probabilities in that particular.

The word "accumulations," in the connection in which it is shown by Tholen's testimony to have been used, is a very inapt and unusual one to express the meaning attributed to it. It will be noticed that he does not say the subsequent accumulations of the parties were to be divided equally among her sons and the children that might be born to them, but it is the accumulations of the land that are to be so divided. Can land be said to accumulate other land? Possibly it may by accretion, when bounded by navigable water, but certainly land does not accumulate other land by purchase. Even if it should be held that the term is broad enough to cover other land purchased with the products of this, there is no attempt to trace by evidence any crop or specific product of this land, into the fund used in payment for the subsequent acquisitions. Nowhere is it shown definitely that a dollar of the money paid for either of the subsequently acquired properties was obtained by

the sale of any product of the Weishaar homestead. The nearest approach to any such proof is a statement to the effect that there was no source of revenue for the Haenkys other than the eighty acres and the labor of the Weishaar boys. But the proceeds of their labor during minority belonged to the parents, who were charged with the expense of their maintenance. No agreement is shown or claimed to the effect that their earnings before majority were to be preserved for them. It was merely the usual and ordinary case of children, living with their mother and a stepfather, performing labor and receiving their support. Nor is there any showing that their labor produced any sum of money in excess of the cost of their maintenance, except by inference from the fact that John Haenky did purchase more property and pay for it. As the case stands, we do not know, nor did the jury or trial court know, whence the money used in payment for the lands bought by Haenky was derived.

The case was first submitted to the jury for answers to certain special questions. The first one inquires whether there was a written agreement entered into by Haenky and Mrs. Weishaar before their marriage, in substance that their property should be divided between the five Weishaar boys and any children born to them, share and share alike. To this the jury answered yes. There is no proof in the case to support this finding. The contract testified to by Tholen is essentially different from that stated in the question. Other questions and answers are equally unfair and unsupported by the testimony. After the return of the verdict and argument of the case before the court, the findings of the jury were accepted and adopted by the court as its findings. The verdict of the jury and the finding and judgment of the court rest, and must rest, solely on the contract as testified to by Tholen.

This contract was sufficient to control the descent and division of the original eighty acres of land and the accumulations thereof. The word "accumulations," as we construe it, includes nothing more than that added to the land itself by way of improvement or betterment. Whatever was placed on the land was an accumulation. Whatever grew out of it and remained a part of the realty, as fruit, or other trees, vines and shrubs, was also an accumulation; but the term cannot be extended to other lands, even if shown to have been purchased with the proceeds of this tract.

This interpretation of the antenuptial contract defeats the claim of the defendants in error to the land, under the facts as disclosed in the record, and renders any consideration of the other questions discussed in the briefs unnecessary. The land in controversy belonged to John Haenky, and after the death of his wife he had power to deed it away, with or without consideration, as he might see fit. The Weishaars were not his heirs. In conveying it to his son Frank he merely deprived his children by his first wife of any share in the property. They are not here questioning the validity of the conveyances. We have not undertaken to consider any question as to liability of Frank Haenky for rents and profits of the original eighty acres, in which, if we read the record correctly, he never had any interest. Doubtless the Weishaar boys might have asserted their rights in the homestead at any time after all of them became of age, and probably had a cause of action against John Haenky for rents and profit received within the period covered by the Statute of Limitations, but no question is discussed before us with reference to a liability on the part of Frank Haenky for rents and profits.

The judgment must be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.